You may proceed. Good morning. May it please the Court. I'm Robert Muse from the Thomas Moore Law Center, and it's my pleasure this morning to represent the plaintiff appellants in this case, and it's my hope to reserve three minutes for rebuttal. At the end, I'll keep the time myself. You're a tall fellow, and I want you to move that microphone up so you can really speak into it. I'm not sure if I can move it any further than that. Can you hear me fine now, sir? Well, just speak up. Thank you. This case obviously raises some very important constitutional issues. Foremost is the First Amendment, and just a comment on the standard of review. Obviously, it's de novo because it was a grant of a summary judgment, but also for First Amendment cases, the Supreme Court has made clear that this Court should conduct an independent examination of the record as a whole without deference to the trial court. Because in the First Amendment cases, the First Amendment is held by the facts that it's held to embrace is where you can really see the First Amendment claims come forward, and that's in the Hurley case. I just want to make that point on standard of review. Now, the First Amendment, as we've argued throughout, is not simply about the right to catharsis. It's about the right to meaningfully participate in public debate, to meaningfully express your message, to influence public opinion. Now, the Supreme Court has long recognized that speech serves its best purpose, its high purpose, when it induces conditions of unrest and even stirs people's anger. And there's no doubt that my client's graphic images, which is the message they're trying to convey, will, in fact, have that impact. But this is political speech, and it's political speech that rests on the highest rung of First Amendment protection. And the point that I want the Court to fully understand is that these large graphic images that the plaintiffs employ are, in fact, their message. These pictures convey a message that is rhetorically inexpressible. And to censor these large images and to censor the visual impact that these images have on the viewer is, in effect, to silence my client's message. And so it's important to remember this. The question I have is that I agree with everything you've said up to the very last sentence, and then that's the question we have to decide. Yes, yes. Because your client has a message that they're permitted, obviously, to make, as do other people. But the question is here, you have to first characterize what the sky is. So it's not a newspaper, it's not a billboard, it's not a public gathering, it's the sky. And would you agree that in order to kind of walk through our analysis, we need to figure out, is it a public forum? Yeah, the forum analysis certainly is first and foremost, and I was going to dive right into that. It seems to me that the ordinances passed doesn't, it wouldn't matter whether it's your client or Pepsi Cola. Well, one of the points, though, of the argument later is that the ordinance itself does permit a limited amount of commercial speech. The trade names, trade marks, trade insignias, as we've argued, for example, Goodyear's blimp or Fuji's blimp or Northwest and all their intricate paint schemes, those are certainly commercial speech. Just a minute, though. Those aren't really, but as I understand that exemption and that exception. Yes, it's commercial speech, but it's on the flying unit. And of course, an airplane goes up, has to have a registry and has to have a number and so on and so forth. You've got another point, however, on the blimps, I guess, the Goodyear and so forth. There may be a point there. I don't know whether that is covered by the ordinance or not. But I guess where the ordinance really covers banners, is it? Well, it covers all sorts of more than just banners. It covers any aerial advertising. It would, except it excludes the Goodyear blimp. It would exclude the Goodyear blimp, which is clearly commercial speech. Well, if it excludes the Goodyear blimp, then the Goodyear blimp is excluded. No, I'm sorry. It permits the Goodyear blimp. It excludes all political aerial advertising. It would permit that certain commercial speech. For example, wouldn't it allow my client to hire Goodyear to express its message in the same manner that Goodyear is expressing its commercial speech? And restrictions that make distinctions based on commercial and political speech are content-based restrictions. And in fact, the law requires that it be greater protection for political speech than commercial speech. And what's interesting here, and this goes somewhat to the preemption argument, which I will be addressing shortly, is it puts the Honolulu in sort of a dilemma. Because the FAA is specifically responsible for the trademarks, trade name, trade insignias. And they had to include that exception because of the FAA requirements. But by including that exception, they now permit a certain measure of commercial speech, but deny all political speech, including using those same means to express a political message. Do you think you have the same argument with respect to Hawaiian Airlines and Northwest that you do to the, what they call them, self-propelled or buoyant airborne object? Well, obviously, I think it's more compelling. I mean, according from Keith Jameson, if you ever watch the college football, he always says, you know, the Goodyear blimp, the most enduring corporate image. So certainly that is an image that has very strong and compelling commercial speech. And if you could use that sort of – you couldn't use Goodyear's blimp to put these images on, though. But Goodyear can fly around with the Goodyear. So I think the analogy, obviously, is a little bit stronger than, you know, painting the pictures on the side of an airline. But the point is, certainly when you have a marking on an aircraft, you may have a tail number that's required so they can identify the aircraft. But certainly these paint schemes are all for commercial speech and not for aircraft identification. So the point is that that is commercial speech, and it does carve out an exception for that. But getting to the form analysis, the proper – You know, I hate to get into the pro-life, anti-life. It's got nothing to do with that. It would apply if it was a governor wanting to run an advertisement. Now, just don't say that Governor Lingle here has an airplane, and she writes on it Governor Lingle. That's okay, isn't it? No, it's not. And let's suppose that CBR has an airplane, and they want to write a slogan on the airplane as long as the ownership. That's okay, isn't it? No, it's not, unless it's a trademark trade insignia. What does CBR mean? Well, that's the name of the organization. But if they – unless the photographs, for example, aren't a trademark trade insignia. Well, I know, but they wouldn't be allowed a trademark, and they wouldn't allow a picture otherwise. That's right. Well, unless it falls into that explicit exemption of a trademark or a trade insignia that's under the ownership of the aircraft operator, it's prohibited. Let's say you change the name of your organization. I actually thought this was an environmental case at first until I read the briefs, okay? There's a problem here, Your Honor. Yeah, because we have a lot of bios out here in the Ninth Circuit that are environmental cases. So let's say, though, you said that your organization is called Pro-Life for America, and you get a trademark, and then you're lucky enough to have the money to own an airplane. You could put that on there. If there was a trademark, you could. If there was a trademark, you could. But, again, there's nothing else. The speech is those pictures. That's the whole point. That was the point of my introductory comments. So you're really censoring the message. Just to say Center for Bioethical Reform is not the message they're trying to convey. The message they're trying to convey is in those graphic images, and really to have them large enough that they make that visual impact. So you do have that exception. And I do want to get to the forum question briefly. The proper form is the navigable airspace. And I think the strongest argument that I'm going to focus on here is the designated public form. And at a minimum, this is a federally designated public form. The city and county of Honolulu does not have control of the navigable airspace. They can't open it. They can't close it. Any more than they could say a federal military installation, they were going to close it down for speech. The FAA, and clearly the federal government through the FAA, has exclusive control over any activity that occurs in the navigable airspace. And it's very clear. The Supreme Court said in Cornelius, a public form may be created by government designation of a place or channel of communication for use by certain speakers. And the FAA permits. They issue certificates of authorization that allow speakers, such as my client, to engage in expressive activity. And it specifically authorizes. Let's talk about that and break it down, because obviously a trademark can serve several functions. But is the fact that you have an identifying mark but nothing more on your airplane, in your view that turns this into a designated public form? Because it's not really a place for speech generally, is it? I disagree, Your Honor. And this is the point I'm trying to make, is that the FAA particularly has an authorization scheme where they authorize aerial advertisement banner towing. And that's directly off the authorization. They're the only ones that can authorize that. The city and county of Honolulu cannot authorize that. And this takes place in the navigable airspace. The only purpose for a banner towing aircraft is to engage in expressive activity. There's no other reason for an aircraft to fly with a banner in the navigable airspace. So the federal government, through this authorization scheme that they have, is specifically authorizing expressive activity, opening up a channel of communications, the navigable airspace for the use by certain speakers, those who have been granted authorization to fly their banners. And granted, I think this is really a case of first impression. Why do you think the federal government is making any decision whatsoever on whether or not a given community is going to permit aerial advertising of some kind, as opposed to believing that what the federal government is doing is controlling or regulating the safety elements of such flights? Well, and again, I think that was the argument that Judge Ezra made principally. But if you look at the whole scheme, the scheme is clearly designed to permit all forms of speech to be engaged in. Look, what do you point to? You could assert that, but what do you point to to support that? Well, if you look in the regulations that we pointed this forward to. I'm looking at them. Yeah, well, it specifically says that they do not restrict the content of the expressive messages. And the analogy that I'm getting... What says that the federal government is trying to preempt the field to prevent states and localities from speaking... Okay, I think we just changed now from the preemption from where we're talking about the form analysis. You want to talk about the... No, you're telling me that the federal government has made this an open forum. What here says the government has made this an open forum? The government specifically authorizes, for example, my client to engage in aerial advertisement banner towing in the navigable airspace on an FAA waiver that specifically lists Hawaii as one of the places. And the question is, who has control of the navigable airspace? Who's the one that can say, we've opened it for speech and we've closed it for speech? Our point is... What here says that the federal government has declared it's open for speech regardless of what the state or locality says? It comes down to the point that who is the one that has control and jurisdiction over the navigable airspace? Well, surely for FAA purposes, the federal government does and the FAA does. But the FAA doesn't speak. In the last half hour we learned they speak. No, of course not. But isn't supposed to speak to the issue of free speech. So why do you say that the FAA's actions in regulating the safety of flights has declared all of this to be open space for advertising? The FAA waivers aren't for the safety of flights. They are for the express purpose of permitting aerial advertising, which is expressive activity. It would be the same thing as saying if a government, if a military installation, is the military in the business of First Amendment activity? No. But if the government opens up, the federal government opens up a military installation and designates it for certain speech, they have opened that forum. Well, I'm looking at the regulations, and I see one that says the operator is responsible for acquiring knowledge of state and local ordinances that may prohibit or restrict band or tow operations. That seems to suggest that a state or local ordinance can prohibit band or tow operations. But you're telling me that, oh, no, they can't, because the fact of these regulations means that it's open public forum. That doesn't follow. How can you explain this part of the regulation? Well, I think there's, I mean, I think we're mixing two things with regard to the forum. I think you can say they can open up the forum for the particular speech. That point, I mean, that one sentence that you've pointed out in the regulations, if you read down those following sentences, I think are the ones that are more explicit. And we're kind of leading into the preemption. The point I want to make is obviously we have the SkySign case we have to deal with, but the SkySign case specifically said that they agreed with the conflict analysis of the Colorado Supreme Court in the banner advertising case. They reached a different conclusion based on the facts, and the facts were that the certificate of authorization at issue in banner did not have any special provisions on the certificate that made it subject to state regulations that control or regulate aerial advertising. My client's certificate of waiver is similar. The second point that was very important for the Ninth Circuit was the fact that the banner advertising certificate of authorization specifically authorized aerial advertising. You've got to remember, the SkySign case was a helicopter that had a white sign attached to the fuselage. It was challenged under the general signage ordinance. This aerial advertising statute was brought up after the point. When you look at that regulation, it's actually somewhat curious why the FAA did it the way they did, because what they took out, if you read down the following sections, Your Honor, it specifically says, it tells its officials, it will not include in their special authorizations in the language of the certificates of waiver any language that makes it subject to any state or local regulations. And it's interesting to me. I'm going to stop you there, because otherwise you won't have any time. I do. Thank you, Your Honor. I appreciate it. Good morning, Your Honors. John Van Dyke, Special Deputy Corporation Counsel for the City and County of Honolulu with me. It's Gordon Nelson of the Department of the Corporation Counsel. And we also have Guy Archer, who drafted the amicus brief for the Outdoor Circle and various representatives of the Outdoor Circle with us here this morning. Your Honor, this case, of course, has the central issues have been before this court, before the SkySign case just a couple of years ago, ruled very clearly that the Honolulu aerial advertising ordinance is not preempted by federal law. The court was very careful to acknowledge that advertising is a traditionally local police power subject. And absent, the court said, absent a clear statement of the federal intent to do so, it would rule that there is no preemption. Now, there's been no clear statement, certainly in the intervening years, of any federal intent to preempt this field. In fact, we have a 2003 letter from the Deputy Chief Counsel for the Federal Aviation Administration, Mr. Whitlow, that's in both the excerpts of records and the supplemental excerpts of records in which he says explicitly that the FAA does not consider the Honolulu aerial advertising ordinance to be preempted. I think counsel was pretty candid. He has a burden to overcome, although he has an argument as to why that might happen. The argument that he made that is intriguing to me is that, apart from a regular airplane, the ordinance itself, if looked at under First Amendment analysis, would appear to give some people the right to, in effect, advertise, but not permit his client and others to engage in other expressive, say, political speech. Your Honor, there's no authorization to advertise. There is an acknowledgment that airborne vehicles can identify themselves. And this exclusion exemption was put in the ordinance out of a recognition that that issue is governed by the Federal Aviation Administration. And in the brief that was filed by the Justice Department in the SkySign case, which we've included in our supplemental excerpts of record on page 155 of the supplemental excerpts of records, the Justice Department says that the Honolulu ordinance reveals the city's sensitivity to science matters that fall squarely within the regulatory domain of the federal government. In other words, that exemption was put in there because that signage, that particular issue, identifying aerial vehicles, is a responsibility of the FAA. So, of course, Honolulu accepts that and defers on that one issue. And the FAA, in its judgment or wisdom, can regulate identifying signs. But every other type of aerial advertising is prohibited. In other words, this is a completely content-neutral governmental regulation that applies equally and in all respects to every type of depiction that anybody might want to put in the sky. So the preemption argument, the center has tried somehow to explain that something is different. But as Judge Clifton pointed out, the handbook continues to say that operators must find out what the local regulations are. And the certificate of authorization that was reissued to the center in February of this year once again says that it does not constitute a waiver of state and local laws or regulations. So nothing could be more clear except that the FAA has authorized, has exercised its jurisdiction over the navigation but does not intend to interfere with the exercise of police power by Honolulu with regard to aerial advertising. And the second issue, of course, is free expression, which the center argues that it is entitled to. And, of course, they're entitled to express themselves, and they have many opportunities to express themselves in many ways in our community. But it must be recognized that when we talk about the airspace above Honolulu, that we're talking about a non-public forum. The case law in this circuit is clear that anything other than something that is a traditional public forum or something that has been intentionally designated by the government as a place for speech is a non-public forum. And we have a series of cases, which we've cited from this circuit that you're all familiar with, to say that most places that the government owns or has responsibility for are non-public forums. And the center then says, well, but we're trying to reach the public forum. We're trying to have these big pictures so that people in the parks and the public forum areas can see them. And they analogize their activity to having a big loudspeaker that would amplify their message in the public forum. Now, obviously, Kovacs versus Cooper, the venerable 1949 case, puts a problem with that argument, because in Kovacs, the Supreme Court said explicitly that governments can regulate sound and can prohibit loud and raucous sounds in order to allow public forum areas to be used, to have multi-uses, to be used by other people for other purposes. In other words, you don't have the right to drown out other people's use of the public forum. You have the right to speak in the public forum, of course, but you don't have the right to impose your views through loud and raucous amplification. And so, however, when you look at it, whether you look at the sky itself, it's obviously not a public forum. It's never been used as a place for discourse. It's not an appropriate place for people to have conversations about political views. Judge Ezra was very clear that this is simply not something that historically has been used that way or is well suited for it. The Cornelius case tells us to evaluate these forum questions in terms of a suitability for discourse, and the sky, of course, is not a place that's suitable for that. It's a place that's dangerous. It's subject to careful regulation by the FAA, and it's not a place that we want a lot of people dealing with difficult, controversial issues. So in our submissions, we've worked hard to clarify and make it crystal clear the important interests that our community has on these issues. So we have interest in trying to reduce injuries from traffic, pedestrian, ocean-related safety issues that would be caused by distractions from unusual depictions in the sky. We have interest in promoting the aesthetic beauty, the outstanding scenery resources that we have in our community. We've included declarations from professors at our university and community leaders to make it clear that these interests are incredibly significant. The aesthetic beauty of our community, of course, is world-renowned, and Professor Preble explains how important it is to have unified, vivid images that have integrity, and he compared the view out to the ocean from Waikiki Beach as comparable to the view of the Grand Canyon, where you need that sense of visual unity that would be compromised if there were aerial advertisements that were floating through the air at all times of day. This is crucial to our economy here. We invite people from all over the world. We're remote. A remote place costs a lot of money to get here unless we can offer an unusual experience, a place of outstanding beauty and an unusual beauty that people won't spend the money to come here, and this will make our economy obviously much more reduced. We've also focused on the... If a surf shop, one of the Hawaii surf shops, owned one of these Goodyear Blimp-type blimps, they could float above Waikiki Beach, is that correct? And it could say, you know, local motion or whatever the name of the surf company was, or Billabong or something like that. The ordinance allows self-identification. As I explained, this was because of the community's recognition that the FAA ultimately has responsibility for such identification matters. The distinction between self-identification and other types of signage is also a very traditional distinction. The Railway Express case back in 1949, the case that we sort of look to for signage instructions, did have an exemption for self-identification. We also have exemptions frequently in signage regulations for on-site, off-site regulation. So one could think of an identifying sign on an aerial vehicle as an on-site sign and therefore permissible. But once you move beyond self-identification, then you're of course inviting an explosion of these types of signs. And so the court in Railway Express, and Justice Jackson's concurring opinion explains this in some detail, just indicated that self-identification presents less of a problem and therefore perhaps doesn't need the same kind of regulation that other types of expression would present. And so, yes, as long as the FAA allows the surf shop to put its logo on its aerial vehicle, it would not be subject to governance by our ordinance. It may be hypothetical, because I'm not aware of the blimps coming out here, but MetLife has a blimp that says MetLife, but it also has a picture of Snoopy presumably sailing the blimp. And it sounds to me like the sign, the MetLife part might be permissible as part of the FAA's requirement for the trademark, but the ordinance could cover the Snoopy picture, and you might be able to say that would be a violation of the ordinance. Well, the exemption covers identifying mark, trade name, trade insignia, or trademark. And so, yes, I think Your Honor is correct that there comes a point where you move beyond simply the identifying mark, trade name, trade insignia, or trademark, and if you're then glorifying your product or your corporate image, then you do go beyond that. That's correct, yes. And Judge Ezra was very clear in his opinion that the Center for Bioethical Reform, like any organization, if they did own an aerial vehicle, could put their identifying name on that vehicle, as Judge McEwen mentioned. It appears there's no further questions for you. Okay. Well, thank you so much, and we appreciate your attention to this. You have 37 seconds, but I'm going to add a minute because nobody ñ no lawyer can talk in 37 seconds. I'm a lawyer, Your Honor. I could probably whip it up. Really? I don't understand it. Ready? Go. Okay, Your Honor. First of all, the presumption against preemption does not apply in this case, contrary to what opposing counsel said in his initial remarks. And the sky sign made it clear because rather than addressing advertising generally, the Honolulu Ordinance specifically targets for regulation an area where there has been a history of significant federal presence, navigable airspace. So I think that's an important point. The letter from the counsel, from Mr. Whitlow, is very interesting, and it's found in Excerpts of Record, pages 78 and 79, and the plaintiff's excerpts, and I want to direct this Court's attention to the second paragraph on page 2 of the letter, which is Excerpts of Record, page 79. It's true up front he says the notice doesn't preempt the Honolulu Ordinance, but listen to what he says. State or local regulations that have the effect of totally banning or unreasonably restricting banner towing would also be preempted since such regulations have the practical effect of barring aircraft operations that have been authorized under individual certificates of waiver or authorization issued by the FAA. What he's saying is the Honolulu Ordinance is preempted, because that's exactly what it does. He obviously wasn't aware of what the facts were. But he says in this letter it's preempted, and I don't have the time to go through this, but if you look in our brief, all the facts, special changes that have occurred since Sky Sign, which point to this case being decided like the banner case, demonstrate that this ordinance is federally preempted. The no provision that opposing counsel pointed to was on the same certificate of waiver in the banner case, but as the Supreme Court in Colorado said, and as the FAA says in the regulation, this has no binding or legal effect. It's just merely a statement of federalism. We cannot waive state laws. Let me ask you this. Yes, sir. To argue preemption, don't you have to say that the FAA regulations have some effect on the scenic beauty overlooking populated areas? FAA doesn't deal with scenic beauty, but the community does. So that's why I wonder if you really, how you can say there's preemption when FAA does not, and not as I know it, want to deal with whatever is beautiful in the sky. Well, I mean, the Burbank case, for example, dealt with noise, and that was affecting the community, and they said you couldn't regulate noise in the local communities because it was. . . You couldn't regulate what? The noise of aircraft because it was federally preempted, and obviously the noise of aircraft would upset the tranquility. Right, but that's actually an aircraft regulation. I mean, it relates to the operation of an aircraft, which has traditionally been an FAA. Well, this is regulating the operation of an aircraft, an aircraft flying a banner, which is specifically authorized by the FAA, so I don't see where there's necessarily a difference. One last point, if I may, is that, you know, he's talking about self-identification. There's no doubt that's commercial speech. The MetLife example with the Snoopy blimp, I'm not a copyright attorney, but I'm sure there could be strong arguments made that that's a trademark or a trade insignia of MetLife, and so that way they could advertise that way under this statute, but yet political speech is not permitted. Does anybody doubt that the Nike swoosh-up would appear on a big blimp, or that Goodyear is not commercial speech? To call self-identification, all they're saying is that's commercial speech. The statute permits commercial speech. It bans all political speech, even using the same means in which commercial speech is allowed. That is not permitted under the Constitution. Thank you. Thank you. I thank both counsel for your very good arguments, and the case of bioethical reform versus Honolulu is submitted. We will recess for this morning. Thank you.
judges: Bright, McKeown, Clifton